UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRED KING, KAREN KING, STEPHEN SMITHERS, SHAUNA SMITHERS, DAVID FRANK, KATE FRANK, KENNETH ANDERSON, LEWIS GREENBERG, LAURIE GREENBERG, CLIFF YOUNG, DANIELLE YOUNG, JOHN ANDREW WILLIAMS, DIERDRA WILLIAMS, WILLIAM MILLER, ELIZABETH MILLER, MARY HOWARD AND MIKE HOWARD, | § | |
| *Plaintiffs,* | § | CIVIL ACTION NO. 4:25-CV-00671 |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| | § | |
| MERITAGE HOMES OF TEXAS, LLC, | § | |
| *Defendant.* | § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

COME NOW, Fred King, Karen King, Stephen Smithers, Shauna Smithers, David Frank, Kate Frank, Kenneth Anderson, Lewis Greenberg, Laurie Greenberg, Cliff Young, Danielle Young, John Andrew Williams, Dierdra Williams, William Miller, Elizabeth Miller, Mary Howard, Mike Howard, Robert Grant, Natalie Grant, Dursilla Kuhner,

Heinz Kuhner, Leah Barker, Shawn Barker, Scott McCaskill, Ingrid Raad, Kim Sharp, John Sharp (collectively referred to as "Plaintiffs") and file this First Amended Complaint, against Meritage Homes of Texas, LLC ("Meritage") and would show the court as follows:

## I.    PARTIES

1.    Plaintiff Fred King is an individual and resident of Montgomery County, Texas.

2.    Plaintiff Karen King is an individual and resident of Montgomery County, Texas.

3.    Plaintiff Stephen Smithers is an individual and resident of Montgomery County, Texas.

4.    Plaintiff Shauna Smithers is an individual and resident of Montgomery County, Texas.

5.    Plaintiff David Frank is an individual and resident of Montgomery County, Texas.

6.    Plaintiff Kate Frank is an individual and resident of Montgomery County, Texas.

7.    Plaintiff Kenneth Anderson is an individual and resident of Montgomery County, Texas.

8.    Plaintiff Lewis Greenberg is an individual and resident of Montgomery County, Texas.

9.    Plaintiff Laurie Greenberg is an individual and resident of Montgomery County, Texas.

10.    Plaintiff Cliff Young is an individual and resident of Montgomery County, Texas.

11.    Plaintiff Danielle Young is an individual and resident of Montgomery County, Texas.

12.    Plaintiff John Andrew Williams is an individual and resident of

Montgomery County, Texas.

13.    Plaintiff Dierdra Williams is an individual and resident of Montgomery County, Texas.

14.    Plaintiff William Miller is an individual and resident of Montgomery County, Texas.

15.    Plaintiff Elizabeth Miller is an individual and resident of Montgomery County, Texas.

16.    Plaintiff Mary Howard is an individual and resident of Montgomery

County, Texas. Plaintiff Mike Howard is an individual and resident of Montgomery

County, Texas.

17.    Plaintiff Robert Grant is an individual and resident of Montgomery County, Texas.

18.    Plaintiff Natalie Grant is an individual and resident of Montgomery

County, Texas. Plaintiff Drusilla Kuhner is an individual and resident of Montgomery

County, Texas.

19.    Plaintiff Heinz Kuhner is an individual and resident of Montgomery

County, Texas.

20.    Plaintiff Leah Barker is an individual and resident of Montgomery County, Texas.

21.     Plaintiff Shawn Barker is an individual and resident of Montgomery County, Texas.

22.     Plaintiff Scott McCaskill is an individual and resident of Montgomery County, Texas.

23.     Plaintiff Ingrid Raad is an individual and resident of Montgomery County, Texas.

24.     Plaintiff Kim Sharp is an individual and resident of Montgomery County, Texas.

25.     Plaintiff John Sharp is an individual and resident of Montgomery County, Texas.

26.     Defendant Meritage Homes of Texas, LLC ("Meritage") is a Texas limited liability company with its principal place of business located at 350 North St. Paul Street, Dallas, Texas 75201.  Defendant has been served, has answered and appeared.

## II.     JURISDICTION

29. The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendant are citizens of different US states, and the amount in controversy exceeds $75,000, excluding interest and costs.

## III.     VENUE

30. Venue is proper in this district under 18 U.S.C. §1391(b)(2) because a substantial part of the property at issues is situated in this district. The Plaintiffs' properties are all located within Montgomery County, in the Southern District of Texas.

## IV.    FACTS

31.    Plaintiffs are residents and property owners in the Blue Heron Bay community in Montgomery, Montgomery County, Texas. Each of their properties are situated near Lake Conroe on a cove referenced as Blue Heron Bay Cove, which is adjacent to Martin Creek which flows directly to Blue Heron Bay Cove.  Plaintiffs' properties were all purchased for their access to the lake and associated recreational activities, including boating and fishing.



32.    In 2020, Meritage began construction of the Pine Lake Cove subdivision, a 300+ acre residential project consisting of 865 homes located adjacent to Blue Heron Bay

and approximately 800 feet southwest from the intersection of Highway 105 and South Pine Lake Road in Conroe, Montgomery County, Texas ("The Site" or "The Development"). Meritage is the owner and operator of The Development. The construction of this subdivision required Defendant to implement and maintain stormwater, pollution, and erosion control measures, as mandated by the Texas Commission on Environmental Quality ("TCEQ") and other applicable state and municipal laws and regulations including those of the City of Conroe.

33.    The TCEQ requires owners of construction sites such as this Development that disturb more than five acres to obtain authorization for coverage under a Construction Stormwater General Permit – TXR150000. Before a developer, such as Defendant Meritage, can begin discharging stormwater, it must comply with all of the terms of this General Permit (TXR150000) and also prepare and implement a Stormwater Prevention Plan (SWP3). The SWP3 details and outlines the site-specific sediment and erosion controls that the developer must implement to prevent sediment and other pollutants from leaving the construction site and potentially entering surface water bodies and adjacent properties.



34.    Prior to Meritage developing Pine Lake Cove, Plaintiffs regularly used their boats and enjoyed direct access to the Blue Heron Bay Cove. Prior to construction of the subdivision by Defendant the Cove was pristine, and the depth of the water was approximately 8-10 feet. Plaintiffs specifically purchased their properties for their proximity to Lake Conroe and the unique recreational opportunities provided by unrestricted private boat and other watercraft access.



35.     Defendant has repeatedly failed to adequately install, maintain, and monitor the required and necessary stormwater, pollution and erosion control measures, such as silt fencing and sediment retention systems, as required by its Storm Water Pollution Prevention Plan ("SWPP")[1] during construction of the homes and other work at The Site. A recent TCEQ's investigation of June 22, 2023, confirmed that Defendant failed to install and maintain best management practices ("BMPs") at the site in violation of 30 TAC §281.25(a)(4) and Texas Pollutant Discharge Elimination System ("TPDES")

---

[1] *See* **Exhibit A.**

General Permit No. TXR1576EL, Part III Section F.6(a) and (c). Specifically, the silt fencing was not installed or maintained at The Site.













36.    As a result of Defendant's failure to follow its SWPP, BMPs, and the requirements of its General Permit during the construction of The Development, conditions were created that allowed sediment, debris and trash from Defendant's development to periodically and intermittently flow into the Blue Heron Bay Cove, significantly damaging the cove and value of Plaintiffs' properties, and depriving all of the Plaintiffs of the use and enjoyment of their respective properties.

37.    Due to Defendant's failure to use BMPs during the development of its property, specifically, its failure to maintain silt fences, maintain structural controls, failure to follow local ordinances and state law, and other management practices to prevent or reduce site runoff after each rainfall or storm event, silt, pollutants, sediments and trash are deposited on or near Plaintiffs' property causing significant damage including:

      a.    A reduction in the depth of the Blue Heron Bay Cove, rendering it unusable for boating and other recreational activities;

      b.    The accumulation of silt and sediment, turning the cove into a "shallow mud pit";

---

c. Accumulation of pollutants, debris and trash washing into the Cove and

damaging the cove's natural beauty and ecosystem.



38.    The sediment buildup not only reduces the depth of the cove but has also created sediment islands, obstructing navigation and degrading the cove's aesthetic and ecological value. Plaintiffs' boats, paddle boards, and jet skis have become stuck in the shallow mud pit areas, and wildlife that once thrived in the cove has significantly diminished.





December 11, 2024

39.     A TCEQ investigation on June 27, 2023 revealed numerous violations by

Defendant, including:

    a.   Unmaintained and overloaded silt fences;

    b.   Unprotected stormwater inlets; and

    c.   Sediment and pollutant discharges into the Blue Heron Bay cove and
       Lake Conroe.

40.     The environmental damage caused by Defendant's negligence in not following BMPs during construction of The Subdivision has deprived Plaintiffs of the use and enjoyment of their properties and created a nuisance. Plaintiffs can no longer use their boats or engage in other water-based activities due to degraded conditions of the Cove, the depth of which has been reduced dramatically by silt, trash and debris runoff from The Development. This silt runoff has also created an artificial island in the Cove which is a result of Defendants' failure to use required BMPs.

41.     Defendant's failure to properly implement BMPs to prevent silt, trash and other debris from entering blue Heron Bay Cove during the development process is a substantial interference with the plaintiffs use and enjoyment of their respective properties. The resulting discomfort and annoyance which this substantial interference has caused each plaintiff is considered unreasonable as a matter of law "…as a normal person being in the area or community would regard the invasion in question as definitely offensive, seriously annoying, or intolerable." <u>Prosser</u> 3d ed 8888 at 599.

## V.     COUNT 1: NEGLIGENCE NUISANCE

42.     Plaintiffs re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

43.     The acts and omissions described above, and alleged below, were intentional and/or negligent.

44.     The acts and omissions described above, and alleged below, substantially interfered with Plaintiffs' interests in the use and enjoyment of land, causing them unreasonable discomfort and annoyance, and other harm.

45.     Defendant owed and violated the following legal duties to Plaintiffs when conducting their operations, actions, and/or inactions – to wit:

a.      Duty to operate as a reasonably prudent developer, including ensuring Best Management Practices, sediment control measures are implemented and maintained to prevent construction site runoff and drainage from damaging neighboring properties.

b.      Duty to ensure that Defendant's activities, equipment, instrumentalities, and waste materials handled, do not cause or contribute to a nuisance or contamination, including, but not limited to, sediment, trash and debris flowing into neighboring properties and waterways.

c.      Duty to prevent injury to others or their property when it reasonably appears or should appear that in the exercise of their lawful rights others may suffer injury to their properties by harmful conditions created by Defendant's construction activities.

d.      Duty to exercise reasonable care to avoid a foreseeable risk of injury to other or their property, including sediment, trash, and debris runoff and water contamination caused by Defendant's construction site.

e.      Duty to take affirmative action to control or avoid increasing the danger from a condition that has been created by Defendant's conduct, such as sediment discharges due to failed or unmaintained erosion controls.

f.   Duty to use ordinary care in protecting others from harm when the harmful condition, such as sediment, trash and debris runoff, is under Defendant's control.

g.   Duty to not harm neighboring property owners or their interests, including preventing sediment, trash and debris from damaging property values and obstructing recreational access to the cove.

h.   Duty to minimize the impact of Defendant's construction activities and operations on neighboring properties such as the Blue Heron Bay Cove, as a reasonably prudent developer would.

i.   Duty to take affirmative action to control or avoid increasing the danger from a condition that has been created by the individual's conduct.

j.   Duty to follow statutory law - Texas Administrative Code, TITLE 30 - ENVIRONMENTAL QUALITY,    Texas    Commission    on Environmental Quality (TCEQ) - Chapter 101. § 101.4 NUISANCE, Tex. Health & Safety Code Ch. 382- §§ 382.003(12), 382.0518, 382.085(a), (b); Tex. Water Code§ 7.051-53, Tex. Penal Code Ann.§ 22.01 - ASSAULT, Tex. Civ. Prac. & Rem. Code ("CPRC") § 75.002 (h), Tex. Penal Code Ann. § 28.04 - RECKLESS DAMAGE OR DESTRUCTION OF PROPERTY, et seq.

46.   The above list is by no means exclusive, and Plaintiffs do not waive/limit their ability to submit additional evidence on the issue of duty at the time of trial.

47.   Defendant knew or should have known that its activities, actions, and/or inactions were wrongful, intentional, or negligent and would result in the damages to Blue Heron Bay Cove which actually has occurred.

48.   Defendant made physical contact with Plaintiffs' persons through

Defendant's discharges of sediment, silt, trash and debris from its construction activities, by:

> a.  Failing to properly supervise personnel responsible for constructing, maintaining, or utilizing Defendant's erosion control systems, equipment, and processes, which failure resulted in discharges of sediment, trash and debris;
>
> b.  Failing to properly hire, train, supervise, monitor, or manage employees or contractors tasked with erosion control and sediment management;
>
> c.  Failing to properly construct or maintain Defendant's erosion and sediment control systems, which failure resulted in discharges of sediment, silt, trash and debris into the Blue Heron Bay Cove and onto Plaintiffs' properties;
>
> d.  Failing to inspect or maintain the construction site and erosion control systems in a safe condition, resulting in sediment, trash, and debris migration that damaged Plaintiffs' properties;
>
> e.  Failing to implement and utilize available sediment control technology to prevent or remediate the discharges of sediment and debris; and
>
> f.  Defendant's actions and/or inactions caused occasional, intermittent, and sporadic substantial discharges of sediment, trash and debris, degrading the Blue Heron Bay Cove's water depth, and water quality, and interfering with Plaintiffs' use and enjoyment of their property.

49.     The above-list is by no means exclusive, and Plaintiffs do not waive/limit their ability to submit additional evidence on the issue of breach at the time of trial.

50.     Plaintiffs have come into contact with Defendant's sediment discharges and debris with each rainfall or storm event. Due to the periodic and unpredictable nature of Defendant's sediment control failures, Plaintiffs are unsure on any given day how their property and the Blue Heron Bay Cove may be affected. Plaintiffs are certain and do allege to have suffered harm at periodic intervals at all times relevant to the dates listed in this petition and since the filing of this lawsuit. Plaintiffs have experienced significant loss of property enjoyment, use, emotional distress, and diminished property values due to Defendant's actions.

51.     Plaintiffs Stephen and Shauna Smithers suffered loss of use of their property and recreational opportunities due to sediment buildup that has obstructed access to the cove and rendered it unusable for boating and water activities. The Smithers allege emotional distress and significant devaluation of their property caused by Defendant's negligence.

52.     Plaintiff David and Kate Frank have been unable to use their dock and boat due to the accumulation of sediment and debris in the cove. The Franks allege frustration, emotional distress, and significant property devaluation caused by Defendant's sediment discharges. The Franks also allege emotional distress and inconvenience caused by Defendant's periodic discharges of sediment and debris.

53.     Plaintiffs Fred and Karen King have suffered similar harm, including the inability to use his property for recreational purposes and significant diminished

property value. The Kings also allege emotional distress and inconvenience caused by Defendant's periodic discharges of sediment and debris.

54.    Plaintiff Kenneth Anderson has experienced significant damage to his property due to sediment accumulation and flooding caused by Meritage's construction practices. Anderson alleges emotional distress, diminished property value, and loss of use of his property.

55.    Cliff Young and Danielle Young have suffered similar harm, including the inability to use his property for recreational purposes and significant diminished property value. The Youngs also allege emotional distress and inconvenience caused by Defendant's periodic discharges of sediment and debris.

56.    Plaintiff Lewis Greenberg has suffered loss of enjoyment of his property due to sediment buildup that has obstructed the cove and impaired water access. Greenberg alleges emotional distress, frustration, and significant property devaluation caused by Meritage's failure to implement and maintain proper sediment controls.

57.    William Miller and Elizabeth Miller have experienced significant damage to their property due to sediment accumulation and flooding caused by Meritage's construction practices. The Millers also allege emotional distress, diminished property value, and loss of use of their property.

58.    Mary Howard and Mike Howard have experienced significant damage to their property due to sediment accumulation and flooding caused by Meritage's

construction practices. The Howards also allege emotional distress, diminished property value, and loss of use of their property.

59.    Robert and Natalie Grant have experienced significant damage to their property due to sediment accumulation and flooding caused by Meritage's construction practices. The Grants also allege emotional distress, diminished property value, and loss of use of their property.

60.    Drusilla and Heinz Kuhner have experienced significant damage to their property due to sediment accumulation and flooding caused by Meritage's construction practices. The Kuhners also allege emotional distress, diminished property value, and loss of use of their property.

61.    Leah and Shawn Barker have experienced significant damage to their property due to sediment accumulation and flooding caused by Meritage's construction practices. The Barkers also allege emotional distress, diminished property value, and loss of use of their property.

62.    Scott McCaskill and Ingrid Raad have experienced significant damage to their property due to sediment accumulation and flooding caused by Meritage's construction practices. Scott McCaskill and Ingrid Raad also allege emotional distress, diminished property value, and loss of use of their property.

63.    Kim and John Sharp have experienced significant damage to their property due to sediment accumulation and flooding caused by Meritage's construction practices.

The Sharps also allege emotional distress, diminished property value, and loss of use of their property.

64.     Plaintiffs collectively allege that Meritage's negligence in managing its construction activities, erosion controls, and stormwater systems directly caused their damages, including loss of use, emotional distress, and property devaluation.

65.     *Res ipsa loquitur* also applies because (i) the character of Plaintiffs' injuries are such that they would not have occurred without negligence, and (ii) the instrumentality that caused Plaintiffs' injuries was under the sole management and control of Defendant.

66.     Defendant's conduct directly and/or proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

67.     Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendant's recurring tortious conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

68.     As recently as November 25, 2024, Plaintiff Stephen Smithers documented that a silt pond on the Defendant's property was leaking into Martin Creek which then drained silt, trash and other construction debris into Blue Heron Bay Cove.



69.     The Plaintiffs' claims are considered a temporary nuisance as opposed to a permanent nuisance as it is of a limited duration and the silting and contamination of the Blue Heron Bay Cove is occasional, intermittent, and sporadic, and contingent upon an irregular force, i.e., rain, silt and debris and trash washes into the Cove after every rain event because the Defendant has failed to maintain their silt fence and comply with other BMPs.

70.     As this lawsuit alleges a temporary nuisance claim against Defendant, each claim accrues anew upon each injury. This claim is considered a temporary nuisance as not only is the stormwater runoff intermittent, occasional and sporadic in nature, and dependent upon a force such as rain, but it is also considered a temporary nuisance

because the injury to the real property can be repaired, restored, or fixed and any anticipated reoccurrence of harm will only be occasional, irregular, and intermittent and not reasonably predictable.

71.    Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

## VI.    COUNT 2: GROSS NEGLIGENCE

72.    Plaintiffs re-allege all the allegations in the previous paragraphs, as though set forth fully herein.

73.    In addition, or in the alternative, Defendant is liable to Plaintiffs for Gross Negligence.

74.    Defendant owed the aforementioned legal duties to Plaintiffs when conducting its activities, actions, and/or inactions.

75.    Defendant breached the duty to Plaintiffs through these activities, actions, and/or inactions.

76.    Defendant consciously and/or deliberately engaged in recklessness, fraud, willfulness, wantonness and/or malice through Defendant's activities, actions, and/or inactions warranting punitive and exemplary damages to Plaintiffs.

77.    Defendant has violated the rules of the TCEQ and the terms of its TDPES "General Permit" No. TXR1576EL and its Stormwater Prevention Plan (SWP3) by failing

to adhere to its directives and causing excessive and illegal silt, trash and debris to flow into Blue Heron Bay Cove.

78.     Defendant knowingly violated the conditions of its "general permit" No. TXR1576EL and its SWP3 for the Pine Lake Cove Development.

79.     Defendant's conduct directly and/or proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

80.     Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendant's recurring tortious conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

81.     Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

## VII.    COUNT 3: NEGLIGENCE *PER SE*

82.     Plaintiffs re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

83.     In addition, or in the alternative, Defendant is liable to Plaintiffs for Negligence *Per Se*.

84.     By the acts or omissions discussed herein, Defendant's negligence violated statutes designed to protect a class of persons to which Plaintiffs belong against the type of injury suffered by Plaintiffs and which statutes are of the type that impose tort liability.

85.    Specifically, Defendant's negligence, with or without legal permitting and without legal excuse, violated the following statutes - to wit:

a.    **Texas Administrative Code, TITLE 30, Chapter 101. § 101.4 NUISANCE:** '...No person shall discharge from any source whatsoever one or more contaminants or combinations thereof, in such concentration and of such duration as are or may tend to be injurious to or to adversely affect human health or welfare, animal life, vegetation, or property, or as to interfere with the normal use and enjoyment of animal life, vegetation, or property.' Defendant Meritage Homes violated this provision by discharging sediment, silt, trash, and debris from its construction activities into the Blue Heron Bay Cove and adjacent properties, which interfered with Plaintiffs' use and enjoyment of their properties, damaged vegetation, and impaired the natural environment."

b.    **Tex. Civ. Prac. & Rem. Code ("CPRC") § 75.002(h)**: 'An owner, lessee, or occupant of real property in this state is liable for trespass as a result of migration or transport of any contaminant, as defined in section 382.003(2) of the Texas Health and Safety Code ["Contaminant" includes particulate matter, sediment, or other pollutants produced by processes other than natural], only upon a showing of actual and substantial damages by a plaintiff in a civil suit.' Defendant Meritage Homes' sediment discharges migrated from its construction site into the Blue Heron Bay Cove and neighboring properties, resulting in significant damage, including sediment buildup that blocked recreational access and diminished property value."

c.    **Tex. Penal Code Ann. § 28.04 - RECKLESS DAMAGE OR DESTRUCTION OF PROPERTY**: 'A person commits an offense if, without the effective consent of the owner, they recklessly damage or destroy property of the owner.' Defendant Meritage Homes recklessly damaged Plaintiffs' properties by failing to maintain proper erosion controls, allowing sediment and debris and trash to

accumulate on Plaintiffs' land and in the Blue Heron Bay Cove, causing obstruction, loss of use, and devaluation of the properties."

d.  **Tex. Water Code § 26.121(a):** 'No person may discharge or cause or allow the discharge of any waste or pollutant into or adjacent to any water in the state without a permit.' Defendant discharged sediment, trash, and debris into Blue Heron Bay cove, a water body, without sufficient controls, violating this statute."

e.  **Texas Health & Safety Code Ch. 401.003(6):** Defines 'pollutant' broadly to include solid or liquid material discharged into the environment. Defendant's sediment and debris runoff from its construction activities qualify as pollutants under this definition."

f.  **Texas Water Code § 7.351:** Provides for civil penalties for violations of water quality standards, including unauthorized sediment discharges. Defendant may face penalties for violating water quality laws by allowing sediment runoff into the cove."

g.  **Tex. Civ. Prac. & Rem. Code § 41.001(6):** Defines gross negligence as a reckless disregard for the safety or rights of others. Defendant's repeated failure to implement or repair sediment controls demonstrates a reckless disregard for Plaintiffs' rights and properties."

h.  **Texas Water Code §11.086:** Provides for civil penalties for damages caused by overflows of diverted water.

i.  **Texas Administrative Code 30 TAC §281.25(a)(4):** which requires persons such as the Defendant to install and maintain Best Management Practices (BMPS) at a development site such as this.

j.  City of Conroe Municipal Ordinance Section 26-198(2)(a) which requires all owners and/or operators of construction sites to use best management practices pursuant to the applicable construction

permit to control, reduce, and prevent to the maximum extent practicable, the discharge of pollutants to the waters of the U.S.

86.     Defendant's violations of these rules and statutes are without a legal excuse.

87.     Defendant's actions directly and proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

88.     Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendants' recurring tortious conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

89.     Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

## VIII. COUNT 4: PRIVATE NUISANCE – INTENTIONAL NEGLIGENCE and *PER* QUOD

90.     Plaintiffs re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

91.     In addition, or in the alternative, Defendant is liable to Plaintiffs for Private Nuisance - Intentional, Negligence, and/or *Per Quod*.

92.     Plaintiffs are owners of Plaintiffs' Property.

93.     Defendant's actions caused, and continues to cause silt, trash, and sediment buildup around Plaintiffs' properties causing unreasonable interference with their use of the property. This inaction has caused and continues to cause significant environmental

degradation.

94.    Plaintiffs' Private Nuisance Claim - Intentional Private Nuisance Against Defendant: Defendant's interferences and invasions were intentional in that the Defendant knew or was substantially certain that their continual failure to implement Best Management Practices required by their SWP3 to prevent stormwater, silt, sediment and trash from leaving The Development property would cause interferences and invasions to Plaintiffs' property,  thus depriving them of use and enjoyment of their Property.

95.    Plaintiffs' Private Nuisance Claim - Negligence Private Nuisance Against Defendant: Defendant's Private Nuisance Activity, interferences, and invasions were negligent in that Defendant's owed Plaintiffs the legal duty of not discharging excessive amounts of silt, pollutants, trash or sediment causing sediment buildup, clogging, and causing an island to be formed in the waterways.

96.    Plaintiffs' Private Nuisance Claim - *Per Quod* Private Nuisance Against Defendant: Defendant's waste disposal activities, actions, and/or inactions and Defendant's Private Nuisance Activity were abnormal and out of place in their surroundings.

97.    Defendant's actions, and/or inactions, including those previously referenced in Paragraphs 16 through 38, and Defendant's Private Nuisance Activity - the frequency, duration, degree, and extent of [which] substantially interfered with Plaintiffs'

private use and enjoyment of Plaintiffs' Property by, among other things, causing unreasonable apprehension, offense, discomfort, annoyance, loss of peace of mind, emotional harm/distress, inconvenience, deprivation of enjoyment of property; loss of use and enjoyment of Plaintiffs' property; diminution of Plaintiffs' property value; constructive eviction of Plaintiffs from Plaintiffs' property; and loss of Plaintiffs quality of life. Defendant's actions and/or inactions are a continual condition on the properties owned by Plaintiffs that cause continued property devaluation as well as damage to property.

98.    Defendant's actions, and/or inactions and Defendant's Private Nuisance Activity interfered with Plaintiffs' private use and enjoyment of Plaintiffs' Property.

99.    Defendant's conduct directly and/or proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

100.    Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendant's recurring tortious conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

101.    Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

## IX.    COUNT 5: TRESPASS TO REAL PROPERTY

102.    Plaintiffs re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

103.    In addition, or in the alternative, Defendant is liable to Plaintiffs for Trespass to Real Property.

104.    Plaintiffs are the owners of their respective properties.

105.    Defendant physically, intentionally, and voluntarily entered Plaintiffs' Property when Defendant caused sediment deposits to fill the waterways in the lake near Plaintiffs' properties which led to excessive accumulation of debris deposits during rain events.

106.    Defendant's actions, and/or inactions and Defendant's Trespass Activity - the frequency, duration, degree, and extent of [which] substantially interfered with Plaintiffs' private use and enjoyment of Plaintiffs' Property by, among other things, causing unreasonable apprehension, offense, discomfort, annoyance, loss of peace of mind, emotional harm/distress, inconvenience, deprivation of enjoyment of property; loss of use and enjoyment of Plaintiffs' property; diminution of Plaintiffs' property value; constructive eviction of Plaintiffs from Plaintiffs' property; and loss of Plaintiffs quality of life.

107.    Defendant's conduct directly and/or proximately caused injury to Plaintiffs, which resulted in the damages detailed below.

108.    Pursuant to the Continuing Tort Doctrine, Plaintiffs' claims do not accrue until Defendant's recurring tortious conduct ceases. Moreover, the "Discovery Rule" defers accrual of the foregoing causes of action until "discovery" occurs.

109.    Plaintiffs seek unliquidated damages within the jurisdictional limits of this court.

## X.    DAMAGES

110.    As a result of the above-described acts and omissions, Plaintiffs, who are persons of ordinary sensibilities, have suffered unreasonable discomfort and annoyance, apprehension, offense, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of their property in the past, present and future.

111.    Each named Plaintiff seeks all appropriate damages provided under Texas law, including but not limited to damages for:

a.    Emotional harm to Plaintiff from the deprivation of the enjoyment of their property.

b.    Property damage to real and personal property.

c.    Loss of market value damages, which is the difference in the value of Plaintiff's Property immediately before and immediately after damage.

d.    Repair damages, which is the value of the reasonable cost of repairs.

e.    Loss of use and enjoyment of property damages.

f.    Loss of use of Plaintiff's land.

g.    Unliquidated damages within the jurisdictional limits of this court.

h.    Exemplary damages under Texas Civil Practice & Remedies Code§§ 41.001, 41.003(a), *et seq.*

i.    Pre-judgment and post-judgment interest. Texas Finance Code §304.001, *et seq.*, and any other applicable law.

j.     Plaintiff seeks all other remedies provided under Texas law, including but not limited to Abatement, Injunctive, and/or Equitable relief/damages.

## XI.     EQUITABLE RELIEF

112.     As described above, Defendant has committed wrongful acts that have caused imminent harm to Plaintiffs, as well as irreparable injury, for which there is no adequate remedy at law.  Accordingly, on final hearing on the merits, Plaintiffs seek permanent injunctive relief requiring Defendant to cease all erosion causing operations at the Pine Lake Cove Development.  Plaintiffs seek a permanent injunction that includes but is not limited to precluding current and future landscaping and any other home construction activities or future operations that will harm the Plaintiffs' use and enjoyment of their Properties.

## XII.     CONDITIONS PRECEDENT

113.     All conditions precedent have occurred.

## XIII. STATUTE OF LIMITATIONS TOLLED

114.     The recurring wrongful conduct of Defendant, as alleged herein, which has been repeated over a period of time, constitutes a continuing tort.  Pursuant to the Continuing Tort Doctrine, a claim for a continuing tort does not accrue until the tortious conduct ceases, and Defendant's wrongful conduct has not ceased.  The Continuing Tort Doctrine operates to toll the running of the two-year limitations period under Section

16.003 of the Texas Civil Practices and Remedies Code.  In addition, Plaintiffs assert the Discovery Rule to toll the running of any statute of limitations.

115.    As a temporary nuisance claim is alleged herein, a claim accrues anew upon each injury and the injuries are continuing to occur as of just weeks before the filing of this lawsuit.

## XIV. JURY DEMAND

116.    Plaintiffs demand a trial by jury and tender the appropriate fee upon the filing of this petition.

## XV.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs ask that they be awarded a judgment against Defendant for the following: actual damages; prejudgment and post judgment interest; court costs; exemplary damages; a Permanent Injunction, and all other relief to which Plaintiffs are entitled at law and inequity.

Respectfully submitted,

**GRISSOM & THOMPSON**

*/s/ William W. Thompson, III*
William W. Thompson, III
bill@gandtlaw.com
State Bar No. 19960050
Donald H. Grissom
don@gandtlaw.com
State Bar No. 08511550
509 West 12th Street
Austin, Texas 78701
(512) 478-4059
(512) 482-8410 Fax
*A6orneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct copy of the foregoing document has been either hand-delivered, sent by U.S. Mail, Certified Mail, Return Receipt Requested, electronic mail, the Court's ECF system, and/or Facsimile Transmission to all counsel of record on July 25, 2025.

*/s/ William W. Thompson, III*
William W. Thompson, III

**William J. Jackson**
Email: bjackson@kelleydrye.com
**Lauren H. Shah**
Email: lshah@kelleydrye.com
**Fanny B. Turcios**
Email: fturcios@kelleydrye.com
Kelley Drye & Warren LLP
515 Post Oak Blvd, Suite 900
Houston, Texas 77027
Phone: (713) 355-5000
Fax: (713) 355-5001
*Attorneys for Defendant*